**ZALE CORPORATION AND CORRI-GAN–REPUBLIC, INC., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 71–2633.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1973.

Rehearing Denied March 9, 1973.

Sam G. Winstead, Jack Pew, Jr., Dallas, Tex., for petitioners.

Ronald M. Dietrich, Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Robert E. Duncan, Atty., F.T.C., Washington, D. C., for respondent.

Before GEWIN, COLEMAN and IN-GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

The issues on this petition to review an order of the Federal Trade Commission, requiring the petitioners to cease and desist from violations of Regulation Z [1] promulgated under the Truth in Lending Act,[2] are (1) Whether the parent corporation shall be held accountable for its own and its subsidiary's violations of the Regulation; (2) whether an injunction against future violations of the Regulation is appropriate where the parent corporation has conceded the violation but asserts their non-recurring nature; and (3) whether the cease and desist order entered in this case was overly broad in its prohibition of violating sections of the Regulation assertedly not violated.

Petitioners are the Zale Corporation and its owned or controlled subsidiaries (the Zale Corporate Enterprise). Zale itself is a combination operating and holding company, and as a holding company controls a network of 1056 wholly owned subsidiaries, including the subsidiary, Corrigan-Republic, Inc. The Corporate Enterprise engages in a nationwide business of selling retail jewelry and other merchandise, generating a large volume of consumer credit transactions.[3]

The consumer credit transactions of the Zale Corporate Enterprise were the subject of FTC's inquiry. Specifically, the Commission attacked the Enterprise's uniform retail installment contract as used in the subject period, July 1, 1969 to December 31, 1969. Zale has conceded this form's violation of Regulation Z in thirteen particulars by failing to:

1. Properly disclose the "dollars finance charge per $100 of unpaid balance;"

2. properly disclose the term "finance charge" more conspicuously than other required terminology;

3. exclude the amount of the "finance charge" in the computation of the "amount financed;"

4. properly disclose the term "finance charge" in proper meaningful sequence;

5. properly include the charge for credit life insurance in the term "amount financed."

6. disclose the amount of the "dollars finance charge per year per $100 of unpaid balance" with an accuracy to the nearest quarter of one percent;

1. 12 C.F.R. 226.1, et seq.

2. Title I of the Consumer Credit Protection Act (the Truth in Lending Act) provides in part:

Sec. 105 "The Board [of Governors of the Federal Reserve System] shall prescribe regulations to carry out the purposes of this title. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this title, to prevent circumvention or evasion thereof, or to facilitate compliance therewith" 82 Stat. 148 (1968), 15 U.S.C. § 1604 (1970).

Sec. 108(c) "Except to the extent that enforcement of the requirements imposed under this title is specifically committed to some other Government agency under subsection (a) of this section, the Federal Trade Commission shall enforce such requirements. For the pur-

pose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement imposed under this title shall be deemed a violation of a requirement imposed under that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with the requirements imposed under this title, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act" 82 Stat. 150 (1968), 15 U.S.C. § 1607(c), (1970).

The enforcement provision relates to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

3. For fiscal 1970 aggregate net sales of Zale Corporation and its subsidiaries were $384,172,196, 33% of which involved extension of consumer credit.

7. use the term "cash downpayment" when the downpayment was in money;

8. properly use the term "unpaid balance of cash price;"

9. treat an existing consumer obligation as a new transaction when the obligation was increased;"

10. clearly identify the property in which a security interest was retained;

11. accurately identify the method used for computing any charge that is deducted from the amount of any rebate of unearned finance charge;

12. include the proscribed notice when required disclosures are made on both sides of the document; and

13. make the required disclosures on the reverse side of the contract in the necessary clear, conspicuous and meaningful sequence.

■ Zale, however, contends that the offending form has been remedied to comply with the Regulation. The Commission disagrees, finding still other violations such as the new form's notice provision. See 12 C.F.R. 226.6(a). Additionally, it should be noted that certain of the admitted violations involve incorrect amounts or rates in the actual transactions rather than in the use of terminology or disclosure sequence which is preprinted on those forms. Whether or not such practices have actually been abandoned can only be determined through subsequent enforcement procedures. Hence, while respecting the good corporate name of the Zale Enterprise, there is no valid assurance that if Zale were free of the Commission's restraint it would not continue its former course. *Compare* Sears, Roebuck & Co. v. FTC, 258 F. 307 (7th Cir., 1919), and Clinton Watch Co. v. FTC, 291 F.2d 838 (7th Cir., 1961). "Courts properly leave to the Commission's non-abusive discretion the question whether the public interest requires the protection of an order in cases where unlawful practices have been discontinued." Cotherman v. FTC, 417 F.2d 587, 594 (5th Cir., 1969). Zale's statement that it has amended its form and no longer will violate the Act was unpersuasive before the Commission and is insufficient to convince us that the Commission abused its discretion in entering a cease and desist order.

"Even though Sullivan and Cotherman promised never to re-enter the lending business, the Commission is not bound 'simply by the promise[s] of the petitioner[s]'. C. Howard Hunt Pen Co. v. FTC, 3 Cir. 1952, 197 F.2d 273, 281; *see* Eugene Dietzgen Co. v. FTC, 7 Cir. 1944, 142 F.2d 321, 330–331; Stanley Laboratories Inc. v. FTC, 9 Cir. 1943, 138 F.2d 388, 390. A *promise* to go and sin no more is merely one of the circumstances that the Commission should consider in determining how the public interest in stopping the deceptive practices can best be accomplished. On the record as a whole we cannot say that the Commission abused its discretion in issuing the cease and desist order against Cotherman and Sullivan."

Cotherman v. FTC, *supra*.

Zales next questions the scope of the Commission's order and the Commission's power to look to the parent Zales for all violations occurring in the daily use of the credit forms in the Enterprise—to Zales the latter vests review in the district court.

■ We conclude that the FTC appropriately entered its decree against the Zale Enterprise due to the presence in the record of the following factors:

1. The source of the majority of violations is the form prepared by the parent Zale and distributed by it to its subsidiary and division stores alike.

2. Accountability for the use of the form lies with the parent Zale.

3. The advertising done is in the Enterprise name vis-a-vis the names of specific stores.

4. The Enterprise organization denies recognition of the separate corporate infra structure employed.

The following facts supported by this record are borrowed from the government's brief:

The parent Zale Corporation and its subsidiaries have consistently maintained common or overlapping officers and directors. A meeting of all the directors and officers of Zale and its 1,056 subsidiaries would consist of only forty-one individuals. Of these, thirty-two are directors or officers of the Zale Corporation, and of these thirty-two individuals, thirteen are directors or officers in one or more subsidiaries. Thus, there are only nine individuals holding positions as officers or directors in the 1,056 subsidiaries who are not also officers or directors of the parent Zale.

The following table shows the overlapping of directors and officers of the parent and its subsidiaries:

| Name | Zale Corporation | Zale's Divisions except Butler Shoe Division | Zale's Butler Shoe Division |
|---|---|---|---|
| Ben A. Lipshy | President, Director | President, Director | Director and President of one corporation |
| Donald Zale | Exec. Vice President, Director | Director | Director of one corporation |
| Leo Fields | Group Vice President, Director | Director or officer or both | Director of one corporation |
| John P. Dickens | Vice President, General Counsel | Vice President or Asst. Secretary or both | Vice President and Asst. Secretary of one corporation |
| Lew Zale | Group Vice President, Director | Director or Vice President for all except subsidiaries in three divisions | Vice President of one corporation |
| Esir Wyll | Secretary | Secretary | Secretary of one corporation |
| Clarence Feuer | Vice President | —————— | Vice President of 193 corporations |
| Sidney Flanzbaum | Vice President | —————— | President of 54 corporations |
| Shearn Robinsky | Treasurer | Treasurer | Treasurer of one corporation |
| Marvin Rubin | Senior Vice President | Vice President Zale Store Division only | —————— |
| I. D. Shapiro | Vice President, Director | —————— | President of 193 corporations, Director of 247 corporations, Vice President of 54 corporations |
| Albert Greenfield | Senior Vice President | —————— | Director, Vice President in 247 corporations |
| George Heard | Vice President, Director | —————— | Director in 247 corporations, Secretary-Treasurer in 247 corporations, Vice President in one corporation |

Thus the integrated operation interlocking directorate and unified advertising strongly militate for finding the Enterprise to be the appropriate subject for the Commission's order and for application of the exceptions to recognition of separate corporate entities where to do so frustrates a statutory policy. NL

RB v. Deena Artware, Inc., 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960); Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1943); P. F. Collier & Son Corp. v. FTC, 427 F.2d 261 (6th Cir., 1970), cert. den. 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186; Delaware Watch Co. v. FTC, 332 F.2d 745 (2nd Cir., 1964). As then Judge Cardozo said in Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 95, 155 N.E. 58, 61 (1926):

"Liability of the parent has never been adjudged when the subsidiary has maintained so consistently and in so many ways as here the separate organization that is the mark of a separate existence, and when the implication of a contract for unity of operation would be the implication of a contract for the commission of a crime.

"The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an 'alias' or a 'dummy.' All this is well enough if the picturesqueness of the epithets does not lead us to forget that the essential term to be defined is the act of operation. Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice. Ballantine, Parent and Subsidiary Corporations, 14 Cal.Law Review, 12, 18, 19, 20. The logical consistency of a juridical conception will indeed be sacrificed at times, when the sacrifice is essential to the end that some ac-

cepted public policy may be defended or upheld. This is so, for illustration, though agency in any proper sense is lacking, where the attempted separation between parent and subsidiary will work a fraud upon the law. . . . At such times unity is ascribed to parts which, at least for many purposes, retain an independent life, for the reason that only thus can we overcome a perversion of the privilege to do business in a corporate form. We find in the case at hand neither agency on the one hand, nor, on the other, abuse to be corrected by the implication of a merger. On the contrary, merger might beget more abuses than it stifled. Statutes carefully framed for the protection, not merely of creditors, but of all who travel upon railroads, forbid the confusion of liabilities by extending operation over one route to operation on another. In such circumstances, we thwart the public policy of the state instead of defending or upholding it, when we ignore the separation between subsidiary and parent and treat the two as one."

*Compare* Berger v. Columbia Broadcasting Systems, Inc., 453 F.2d 991 (5th Cir., 1972). *See, generally,* Cary on Corporations (4th ed. 1969).

The Commission did not err in considering Zale an enterprise and drafting its order accordingly. Cf. NLRB v. Condenser Corp., 128 F.2d 67 (3rd Cir., 1942); *accord,* NLRB v. Concrete Haulers, 212 F.2d 477 (5th Cir., 1954). *See* Carter Products, Inc. v. FTC, 323 F.2d 523 (5th Cir., 1963), and *Cotherman, supra.*

■ Nor did the Commissioner err in the scope of its order. Each section referred to in its order corresponds to a significant violation found by the Commission and supported by the record.[4]

■ The Commission's order is not the blanket order condemned in Grand

4. The FTC in its order stated:
  "The order proposed by the examiner is not, as respondents suggest, a broad undifferentiated order simply prohibiting respondents from violating the statute or the regulation irrespective of whether the particular provision applies to the type of business in which respondents are engaged. Rather, the examiner's order is carefully limited to those full sections of the implementing regulation that regulate the specific kinds of prac-

Union Co. v. FTC, 300 F.2d 92 (2nd Cir., 1962), nor does it forever restrain Zale from engaging in lawful activity, Cotherman v. FTC, *supra,* and is due to be sustained unless unreasonable in consideration of the violations found. FTC v. Mandel Bros., 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1958) ; Jacob Siegel Co. v. FTC, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1959).

We cannot say that the Commission's order was not reasonably related to the demonstrated violations of the Act, nor can we say that the Commission abused the wide discretion that it has in a choice of remedy deemed adequate to cope with the unlawful practices found in this record.

The petition for review is denied.

tices in which respondents have been shown to be engaged. The order prohibitions are carefully tailored to exclude any section of this regulation which bears no relationship to the practices of Zale Corporation and its network of subsidiaries.9"

"9. The examiner's order includes within its prohibitions three full sections of Regulation z. These sections embrace the practices in which respondents admittedly engaged and in which there were admitted violations. These sections also cover the types of practices in which respondents' activities are concentrated. For example, Section 226.7 governs the specific disclosure requirements for credit other than open end. The retail installment contract of the Zale Store Division owned by the Zale Corporation falls directly under this section. Section 226.8 governs the specific disclosure requirements for open end credit. The periodic statement of Corrigan-Republic which was used throughout the Fine Jeweler's Guild Division, owned by the Zale Corporation falls under this section. Section 226.6 sets out the general disclosure requirements of type, size, and placement that ties into the other two sections."