**Eli PERITZ et al., Plaintiffs-Appellees,**

v.

**LIBERTY LOAN CORPORATION et al., Defendants-Appellants.**

No. 74–1667.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1975.

Decided Sept. 3, 1975.

Reconsideration and Modification Denied Oct. 30, 1975.

William B. Davenport, John C. Tucker, Peter A. Flynn, Chicago, Ill., for defendants-appellants.

Robert Plotkin, Chicago, Ill., H. Douglas Laycock, Austin, Tex., for plaintiffs-appellees.

Before SWYGERT and BAUER, Circuit Judges, and BRYAN, Senior District Judge.*

SWYGERT, Circuit Judge.

Plaintiffs are debtor parties to consumer loan contracts entered into with several offices of defendant Liberty Loan Corporation. The loans involved are consumer loans within the meaning of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601, *et seq.,* also known as the Truth in Lending Act. In their amended complaint plaintiffs alleged, *inter alia,* that the loan contract form which was used by Liberty in making the loans in question failed to comply with certain disclosure requirements contained in the Act and in certain regulations promulgated thereunder, commonly and collectively referred to as "Regulation Z".[1] A pendent claim was brought under the Consumer Finance Act of Illinois, Ill.Rev.Stat. ch. 74, §§ 19, *et*

---

\* Senior District Judge Frederick van Pelt Bryan of the United States District Court for the Southern District of New York is sitting by designation.

1. These regulations are promulgated pursuant to section 1604 of the Act and are found at 12 C.F.R. §§ 226.1, *et seq.*

*seq.,* the relevant provisions of which are identical to those contained in Regulation Z. These two claims were both brought as class actions on behalf of all persons with similar grievances against defendant Liberty.

Specifically, plaintiffs claimed that a form used by Liberty entitled "Combined Statement, Note, Security Agreement, Disbursement Schedule and Election as to Insurance Pertaining to a Loan" did not disclose with sufficient clarity the fact that the purchase of credit life and/or disability insurance was not required for obtaining a loan from Liberty. Plaintiffs rely on section 226.4(a)(5) of Regulation Z which provides in part:

§ 226.4. Determination of finance charge

(a) General rule. Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

\* \* \* \* \* \*

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

It is not disputed that the finance charge in each transaction as disclosed on the respective loan forms did not include the cost of insurance written in connection with the loan, nor is the adequacy of the signed and dated election provision in issue. The central question on the merits, then, is whether the challenged form "clearly and conspicuously disclosed in writing [that] the insurance coverage [was] not required."

Plaintiffs' first amended complaint was filed on October 13, 1972. Six days later, and prior to any request for determination of the class action status of the case, plaintiffs moved for summary judgment on the issue of adequate disclosure. In their motion plaintiffs pointed out that the violations complained of "*appear on the face of, and are clearly apparent from a simple examination of,* defendants' standard printed form." (original emphasis). Liberty responded shortly thereafter by filing a cross-motion for summary judgment on the notice issue, and they too indicated their belief that the only relevant evidence on this issue was the loan form itself.

While the parties were briefing the cross-motions for summary judgment, defendant Liberty moved to disallow class action status for all counts of the complaint. This was the first time this issue had been raised by either of the parties. Briefing commenced on this motion. On March 5, 1973, prior to the completion of briefing on the class action question, the district judge entered a decision and order denying both motions for summary judgment. In his order the district judge indicated his belief that the "clear and conspicuous" issue was "not entirely a question of law as the parties seem to assume" and he noted that subject to further consideration he would submit this issue to a jury. Thereafter, defendants submitted a brief on the question of the use of a jury to determine whether defendants' form met the statutory requirement that the insurance disclosure be clear and conspicuous. Defendants' brief argued that an application of the plain words of the statute to the printed form in issue presented a question of law only and that no factual issues remained for a jury to consider.

Plaintiffs responded with a brief contending, in contradiction to their original position, that the notice issue was a proper jury question.

On May 7, 1973 the district judge reaffirmed his decision to submit the clear and conspicuous disclosure question to a jury. At the same time he severed this issue from the class action determination issue and specifically noted his intent to defer any consideration of the class action issue until after a jury trial on the disclosure question. A status report was set for May 11, 1973 at which time a trial date was to be determined. The status date was continued, however, and defendants moved for certification pursuant to 28 U.S.C. § 1292(b) for immediate appeal of the questions of the use of a jury on the statutory disclosure question and the delay of class determination until after trial. Defendants submitted a brief in support of this motion on May 24, 1973. On May 29, 1973 a status report hearing was held and trial was set for July 5, 1973. On June 27, 1973 defendants moved to reset the trial date in light of the fact that no decision had been rendered regarding the section 1292(b) motion for certification and in light of the difficulty defendants were having in determining the scope of the issues to be tried and evidence to be allowed at a trial on the notice question. This motion was denied. On July 5, 1973 the cause was called to trial. On July 10, 1973 the jury returned special verdicts finding that the challenged loan form "did not clearly and conspicuously disclose that the purchase of insurance was not required as a condition of making the loan in accordance with [the federal statute and regulation and the state statute]."

After the verdicts were entered defendants filed a post-trial motion seeking to overturn the special verdicts along with memoranda supporting this motion. Further briefing ensued. The post-trial motion was denied in an order entered on November 2, 1973. On December 10, 1973, without any further briefing on the issue, the district judge entered an order in which he determined that a class action could be maintained on the claims remaining in issue. Defendants moved for reconsideration of this order and briefing on this motion commenced. On March 28, 1974 the district judge reaffirmed his original determination that a class action was maintainable on these claims under Fed.R.Civ.P. 23. At the same time he entered an order determining the procedures to be used in notifying the class members of the suit being maintained in their behalf. In this order the district judge determined that costs of notice were to "be borne initially by defendants." He also determined that the notice form would require class members to affirmatively opt into the class in order to be included in and bound by any judgment, and that it would set forth certain information concerning possible consequences of opting into the class.

Both parties presented objections to the March 28 order. An exchange of papers ensued. On May 20, 1974 plaintiffs' motion to amend the March 28 order was denied. On May 28 the Supreme Court decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), was handed down. Defendants thereupon moved the district court to reverse its decision assessing costs of notice against defendants, to vacate the special verdicts on the conspicuousness issue, to revise the class notice to delete reference to the special verdicts, and to extend the time for appeal if these motions were denied. Plaintiffs also moved for further consideration of the form of notice based on language in *Eisen*. On June 6 the district judge granted defendants an extension of time for appeal on the issue of costs of notice. Finally, on June 13 and June 20 the motions of defendants and plaintiffs, respectively, were denied.

Defendants thereupon filed a notice of appeal from the orders of April 29, 1974 and June 20, 1974 dealing with costs of notice and the status of the special jury verdicts, and also from "all orders appealable at this time." In addition defendants filed a motion for certification under 28 U.S.C. § 1292(b) for interlocuto-

ry appeal of the district court's orders denying defendants' motion for summary judgment on the disclosure issue, striking certain affirmative defenses, denying their motion for a new trial, postponing consideration of the class action status of the case until after the trial on the disclosure question, certifying a class, and various other orders denying motions to reconsider various of the orders specifically described above. Certification has not been granted. Plaintiffs did not file a notice of appeal initially, but moved instead to have defendants' appeal dismissed. When these efforts were unavailing, plaintiffs filed their own notice of cross-appeal. This notice was not timely, however, and this court dismissed plaintiffs' cross-appeal by order on February 7, 1975.

Our jurisdiction in this interlocutory appeal is thus limited to those orders which qualify as "final orders" under 28 U.S.C. § 1291 and any additional orders or questions directly related to and underlying these appealable orders. *Rosenfeldt v. Comprehensive Accounting Service Corp.*, 514 F.2d 607, 611 n. 5 (7th Cir. 1975).

■ The order of March 28, 1974 assessing costs of notice against the defendants is a final appealable order under section 1291. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 169–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Underlying that order, and basic to it, was the decision of the district court to try fully the central liability question prior to certification of a class in this case. Plaintiffs urge that this distinguishes the assessment of costs of notice in this case from the situation in *Eisen*, where the Supreme Court held that it was improper to make such an assessment on the basis of a "preliminary hearing on the merits." Plaintiffs emphasize that the hearing in this case was not tentative in any way, but was in fact a full trial with all the "traditional rules and procedures applicable to civil trials." 417 U.S. at 178, 94 S.Ct. at 2153. This contention misconceives both the rationale of *Eisen* and the requirements of Rule 23(c), which

must be satisfied in order to maintain a class action.

In *Eisen*, the Supreme Court dealt in part with the question of the proper allocation of costs of a 23(c)(2) notice to class members. In that case, the district court had held a preliminary "mini-hearing" on the merits of the case in order to determine the likelihood of success on the merits. It determined that the plaintiffs were "more than likely to prevail" in the case, and on this basis imposed ninety percent of the cost of initial notice upon the defendants. 54 F.R.D. 565, 567 (1972). The Court of Appeals for the Second Circuit reversed on this question. Its reasoning was three-fold: first, it concluded that nothing in the Federal Rules of Civil Procedure contemplated "any tentative, provisional or other makeshift" determination of the merits in order to assess costs of notice and that such a procedure, lacking in traditional safeguards found in a full scale trial, "does violence to the whole concept of summary judgment"; second, it concluded that Rule 23 did not allow such a procedure, but required instead the soonest possible resolution of "the question of class suit *vel non*"; and third, it pointed out that the district court did not have jurisdiction under the terms of the prior remand to pass in any way on the merits of the case. 479 F.2d 1005, 1015–16 (2d Cir. 1973).

On review, the Supreme Court concentrated its analysis on the requirements of Rule 23:

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.

This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "[a]s soon as practicable after the commencement of [the] action . . . ." In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (CA5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.*, at 427.

417 U.S. at 177–78, 94 S.Ct. at 2152. The central objection was not that the inquiry into the merits had been "tentative," "provisional," or "makeshift," although this fact was mentioned,[2] but rather that it had preceded the class determination in contravention of 23(c)(1).

■ This analysis is not surprising. Earlier the same year the Supreme Court had discussed in some depth the reasons behind the 1966 amendments to the class action rule and had focused in particular on the problem of "one-way intervention" whereby a potential class member could await a resolution of the merits of the claim before deciding whether or not to join the lawsuit. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 545–49, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The Court in that case specifically pointed out that:

[T]he 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments. 414 U.S. at 547, 94 S.Ct. at 763 (footnote omitted).

The obvious import of this language is that the amended Rule 23 *requires* class certification prior to a determination on the merits.

The language of Rule 23(c) itself is clear in this regard.[3] In pertinent part, this section provides:

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

---

2. The problems attributable to the tentative and informal nature of the hearing at issue in *Eisen* were clearly secondary in the opinion of the Supreme Court, as its language indicates:

Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant. 417 U.S. at 178, 94 S.Ct. at 2153.

3. This was recognized in our decision in *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201 (7th Cir. 1971), where we held that in Title VII cases a court has the power to fashion class relief, even though no class was certified prior to a determination on the merits "where justice requires such action." We need not assess here the continued validity of this specialized rule in the face of the subsequent Supreme Court opinions in *American Pipe* and *Eisen*.

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

Section 23(c)(1) makes it plain in the second sentence thereof that the order determining class status is to be made and finalized "before the decision on the merits." Section 23(c)(2) similarly indicates that the class members in a 23(b)(3) class action are to be notified early enough to allow voluntary exclusion prior to "judgment" and also early enough to allow for effective appearance by counsel. Section 23(c)(3), by providing that the judgment shall bind all class members, was specifically intended to confront the one-way intervention problem, as the Advisory Committee Notes point out:

Hitherto, in a few actions conducted as "spurious" class actions and thus nominally designed to extend only to parties and others intervening before the determination of liability, courts have held or intimated that class members might be permitted to intervene after a decision on the merits favorable to their interests, in order to secure the benefits of the decision for themselves, although they would presumably be unaffected by an unfavorable decision. . . . Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated. *Advisory Committee's Note Regarding Rule 23,* 39 F.R.D. 105 (1966).

■ In the face of the Supreme Court's concern in *Eisen* and in *American Pipe* with the problem of one-way intervention,[4] and in the face of the clear language of Rule 23, we are constrained to hold that certification of the class was delayed beyond the permissible period allowed by the rule.

Inasmuch as the plaintiffs here did not seek certification, and in fact affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case.[5] Accordingly,

---

4. We need not decide whether in all cases Rule 23(c) would bar certification subsequent to a decision on the merits. We do note that the Third Circuit has held that a defendant may expressly waive the one-way intervention protection of 23(c) and thereby postpone determination and notice until after resolution of the merits, *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir. 1974), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1975), and that the Fifth Circuit may have at least *sub silentio* indicated that a defendant who seeks summary judgment without first seeking class determination may thereby waive objection to a class certification after a ruling on his motion, at least where plaintiff has taken no affirmative action other than to defend against the motion. *Partain v. First National Bank of Montgomery,* 336 F.Supp. 65 (M.D.Ala.1971), *rev'd,* 467 F.2d 167 (5th Cir. 1972), *class certified on remand,* 59 F.R.D. 56 (M.D.Ala.1973). *See also Haas v. Pittsburgh National Bank,* 381 F.Supp. 801, 802–06 (W.D.Pa.1974).

5. Plaintiffs argue that *Eisen* should not be applied retroactively, relying on *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and this court's decision in *Bendix Corp. v. Balax, Inc.,* 471 F.2d 149, 155 (7th Cir. 1972). Neither case is dispositive here.

   *Chevron Oil* posited a three-part test for determining whether a civil precedent not involving a constitutional question should have retroactive application. The first part of the *Chevron* inquiry is whether the decision in question "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355. Here, the clear language of Rule 23 and the notes of the Advisory Committee preclude any argument that the requirement of pre-merits certification of the class establishes a new principle of law or presents a case of first impression within

this cause is remanded with instruction to vacate the order of certification of the class and to proceed with the individual claims of the named plaintiffs.

the meaning of *Chevron.* The second part of the *Chevron* test looks to the prior history of the rule involved to determined whether retroactive application would further its purpose. Obviously the purpose of 23(c)(1), (c)(2), and (c)(3) are directly at stake here and application of the pre-merits certification rule is the only way to avoid one-way intervention in this case. Finally, *Chevron* requires the court to assess the inequities involved in applying the rule in the particular case. The named plaintiffs are not prejudiced since their claims are still viable. The absent class members are not prejudiced, since the pendency of this lawsuit has tolled the statute of limitations and a proper class or individual action may still be initiated by any class member who desires to do so. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Eisen v. Carlisle & Jacque-*

*lin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Our decision in *Bendix* does not contradict our conclusion that retroactive application is warranted here. In that case we dealt with an express overruling of past precedent. *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). We nevertheless held that *Lear* should apply "retrospectively" to void continued enforcement of license restrictions on the right to challenge the licensed patent since this directly served the purpose of the rule established by *Lear.* We declined to apply the *Lear* rule retroactively to a damage claim based on pre-*Lear* enforcement of the restrictions since this "would not enforce *Lear's* policy," and would lead to inequitable results. 471 F.2d 157. Thus, *Bendix* is merely an application of the *Chevron* test to specific facts, and is in no way contrary to the result we reach here.