**334**

Thomas L. EOVALDI et al., Plaintiffs,

v.

The FIRST NATIONAL BANK OF
CHICAGO, Defendant.

No. 71 C 1654.

United States District Court,
N. D. Illinois,
E. D.

Jan. 26, 1976.

Aram A. Hartunian, Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Joseph DuCoeur and Alan I. Becker, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant.

## DECISION ON PENDING MOTIONS

McMILLEN, District Judge.

Two motions are pending and fully briefed in the above case which involves a certain billing procedure used by defendant allegedly in violation of the Truth in Lending Act. The first of the two motions was filed by the plaintiffs on July 29, 1975 seeking judgment in favor of the class. Before this motion was decided, the defendant filed a motion to "decertify" the class and to reserve judgment on the plaintiffs' motion until the question of decertification had been decided.

The defendant's motion was presumably the result of the intervening decision by the Seventh Circuit Court of Appeals in the case of *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (1975). That case held in substance that a decision should not be made on the merits in a class action until the class was certified pursuant to F.R.C.P. 23(c)(1). It was in turn based upon the controlling decision of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which held that the expense of notifying members of a class under Rule 23(b)(2) must be borne by the plaintiffs in the first instance, regardless of the probable outcome on the merits.

The case at bar presents a somewhat different question than was decided in *Per-*

*itz.* We ruled initially on November 29, 1972 that the action would proceed on behalf of a class, thereby satisfying Rule 23(c)(1). Neither party made any move to notify the members, and instead, on October 4, 1973, plaintiff filed a motion for summary judgment on liability which was opposed on its merits by the defendant. The motion was decided partly in favor of the plaintiff and partly in favor of the defendant, and thereafter on March 24, 1975, defendant obtained the entry of a judgment for damages in favor of the individual plaintiff.

Since *Eisen* had been decided by that time, the court ordered the plaintiff to notify the class members of the pendency of the action, and this was done at his expense by a notice mailed on or about May 19, 1975. Neither the summary judgment on liability nor the judgment for the individual plaintiff was mentioned in the notice. Approximately 4,000 members of the class of 99,000 opted out, thereby readying the case for a money judgment in favor of the remaining members.

■ Rule 23(c)(1) and (2) do not require prompt notification to members of the class but merely require that the class be certified or defined as soon as practicable. The certification can be amended at any time before a decision on the merits and, under some circumstances, even thereafter. In the Seventh Circuit Court of Appeals case of *Jimenez et al. v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), the court held that determination of the appropriate class and notification of its members could be made simultaneously with a decision on the merits, in an action seeking merely injunctive or declaratory relief under Rule 23(b)(2). A judgment on the merits, originally entered by the trial court, was reversed and remanded by the Supreme Court and subsequently the trial court entered a new judgment and certified the class. The Court of Appeals affirmed this procedure, even though the Supreme Court had decided the merits. In the case at bar the actual judgment for the individual plaintiff was not entered until several months after the class

was certified, it was entered at defendant's behest, and thereafter the class was notified without mention of any judgment.

■ Hence notification is not at the jurisdictional threshold where certification is. *Eisen* was concerned with the cost and effect of notification, but neither that decision nor Rule 23 precludes the defendant from proceeding to the merits without notification, if it believes this to be the most efficient means of disposing of the litigation. The question of notification was specifically left open in *Peritz* (p. 354, fn. 4).

It is the court's opinion that the defendant effectively waived any right to advance notification of the class members in the case at bar. The form of the notice which was ultimately used in this case was agreed upon between the parties, without prejudice to the merits, even before the plaintiff's motion for summary judgment was filed. Both parties understandably wished to avoid the heavy expense of notification until they had an opportunity to test the merits. The court was receptive to the summary judgment procedure, but *Eisen* subsequently made it unnecessary insofar as the cost of mailing was concerned.

If notification to a class is necessary before any decision on the merits is made even, for example, on certain jurisdictional questions or on a defendant's motion to dismiss, many class actions either will not be filed or considerable unnecessary expense will be incurred by the plaintiff. Congress has recognized that class actions are a proper vehicle for enforcing a remedial statute such as the Truth in Lending Act. 15 U.S.C. § 1640(a) as amended in 1974 specifically approves class actions for recovering damages up to $100,000 and reasonable attorney's fees under that Act, while at the same time eliminating the minimum recovery of $100 for each member which caused the harsh results sought to be avoided by *Eisen.*

A great deal of legal and judicial time and effort has been expended in this case in an effort to evaluate certain rather technical procedures under the Truth in Lending Act as applied to credit card transactions.

It is doubtful if any case like this one will occur in the future, because of the rather unique violation of the statute attributable to the defendant. On the other hand, a decision on the merits could provide a valuable precedent for billing practices of others in the future, unless the class is "decertified" and the case dies. The notice which was sent to the plaintiff class, by omitting any reference to a judgment on the merits, did not give them a "heads I win, tails you lose" choice. The defendant was not prejudiced by this procedure as is evidenced by the opting out of 4,000 members, but it would now obtain a windfall if the class is "decertified", caused at least in part by its failure to enforce its right to a class notification until after *Eisen* was decided.

Waiver by defendant of notification to class members under certain circumstances has been approved in *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760–2 (3d Cir. 1974); cert. den., 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1975) and may also be proper in the Fifth Circuit, as discussed in fn. 4 of p. 354 in *Peritz*. When only an issue of law is involved and individual damages are small, there is little realistic likelihood of successive complaints which might deprive a defendant of the protection of *res judicata*. Hence there is no good reason why the parties should not be able to obtain a decision on the merits before incurring the expense of notification, and Rule 23 does not mandate the contrary. Plaintiff's motion for judgment on behalf of the class should be granted.

■ We therefore reach the question of the measure of damages. When a judgment was entered on behalf of the individual plaintiff on March 25, 1974, § 1640(a)(1) of Title 15 specifically provided for an award of twice the amount of the finance charges resulting from the defendant's violation of the Truth in Lending Act and not less than $100. On October 28, 1974, Congress amended § 1640(a) to limit the amount of damages recoverable in a class action under the Truth in Lending Act. This section now provides that a creditor is liable to its debtor in an amount equal to the sum of:

(1) any actual damage sustained by such person as a result of the failure;

. . .

(2)(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and

\*   \*   \*   \*   \*   \*

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

To ascertain the "actual damages" sustained by each individual member of the class because of the defendant's failure to send out a bill in a timely fashion would be almost impossible. Each claimant would be required to reconstruct his financial condition and frame of mind of almost five years ago on a small bill which he may not even have realized was received late. Even the plaintiff, a law school professor, testified on deposition that he does not presently know whether he would have paid his statement promptly had it been received on time (p. 7 of plaintiff's reply memorandum filed on September 30, 1975). In other areas of the law, an award of damages without specific proof is approved, in order to avoid the difficulty caused by the defendant's wrongdoing. See *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1946). In the case at bar, however, a second mailing and questionnaire would be required, with results which could only lead to speculative or perjured responses, and neither party has suggested this expensive procedure.

Plaintiff asserts in his memorandum that the calculation by manual examination of each account would be cumbersome and expensive, and this still would not result in actual damages. The plaintiff's second alternative method of calculating damages is a mechanical formula, summarized on pp. 7 through 9 in his memorandum filed August 22, 1975. It likewise would not measure actual damages but would arrive artificially at a figure of about $180,500. Since this a mere estimate and since it would cost at least $27,000 to arrive at the plaintiff's first theory of actual damages, we believe that plaintiff has not succeeded in suggesting a method of proving actual damages in a reasonable and practical manner.

The method of calculating damages which is proposed in the defendant's memorandum is likewise based on an estimate, this one prepared by Emeritus Professor Hans Zeisel of the University of Chicago who has not testified in this case. It results in "actual" damages of approximately $27,-899. This figure is arrived at statistically by computing the probable percentage of cardholders who would have paid in full upon receipt of a timely bill, the percentage who would have made no payment, and the percentage who would have made a partial payment and thereby reduced their finance charges, all based on an analysis of a sample taken from the year preceding April 1971 (Affidavit dated September 2, 1975). Since these are the defendant's calculations, we take them as an admission and since they are more than the cost of any alternative suggested by the plaintiff, we consider the figure reasonable.

We believe, therefore, that the sensible and practical solution is to award the class $27,899 plus $100,000 under § 1640(a)(2)(B) (supra p. 336). The latter amount is not a penalty, and is less than the total amount of interest accruing on all of the accounts during the period of time that the defendant wrongfully delayed the presentation of a bill. Such an award was made to the individual plaintiff by his judgment of $4.25 entered on March 25, 1974, but the $100,000 limit is fixed by § 1640(a) as amended.

The last paragraph of § 1640(a) quoted at page 7 above sets forth some of the relevant factors to be considered in an award in a class action under the Truth in Lending Act. These factors include (1) the amount of any actual damages awarded. Both parties argue in their briefs that actual damages were sustained by some of the members of the class. It is the difficulty in ascertaining or measuring these damages for each class member which precludes individual awards. (2) The net resources of the defendant creditor reach into the billions of dollars. (3) The number of persons adversely affected is substantial. Professor Zeisel's affidavit shows that approximately 75.5% of the class of approximately 95,000 make at least a partial payment on their bills when due. (4) The last factor is the extent to which the creditor's failure of compliance was "intentional". We find and conclude that it was intentional in the sense that the defendant knew what it was doing and did it, although its failure to send out a timely bill was apparently negligent or a mistake of law rather than willful or wanton.

In short, we think that this case should be brought to a practical end in the trial court without the expenditure of further time or money by either side. The defendant will be required to pay the award which we have suggested above, together with costs and attorneys' fees, the plaintiffs' attorneys will be compensated for the time spent in their endeavor to enforce the Truth in Lending Act without being limited to some arbitrary proportion of the recovery, and no individual cardholder with the possible exception of the named plaintiff will gain or lose such an amount of damages that he will suffer from loss of sleep or other subjective or objective effects.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that

(1) Defendant's motion to decertify the class is denied.

(2) Plaintiff's motion for judgment in favor of the class is granted in the amount of $127,899 pursuant to 15 U.S.C. § 1640(a)(1) and (a)(2)(B), together with his reasonable attorney's fee and costs of the action.

(3) Plaintiff will remove from the existing list of names those persons who have opted out and all business names, and checks in an equal amount for each member of the class will be mailed to them with the following endorsement on the back:

By accepting and endorsing this check, the undersigned payee certifies that the BankAmericard transactions for which finance charges were imposed in April and May 1971 were primarily for personal, family, household or agricultural purposes. 15 U.S.C. § 1602(h).

SO ORDERED.