**Dan F. RIDINGS, Jeff Eilert, and William E. Miller, Plaintiffs,**

**v.**

**CANADIAN IMPERIAL BANK OF COMMERCE TRUST COMPANY (BAHAMAS) LIMITED, As Trustee Under Settlement T–1740, New T Co., G L Corp., Jay A. Pritzker, Robert A. Pritzker, Trans Union Corp., Jerome W. Van Gorkom, Bruce S. Chelberg, Sidney H. Bonser, William B. Browder, Thomas P. O'Boyle, William R. Johnson, Joseph B. Lanterman, Graham J. Morgan, Robert W. Reneker, and W. Allen Wallis, Defendants.**

No. 81 C 0486.

United States District Court,
N. D. Illinois, E. D.

April 12, 1982.

Robert D. Allison, Prins, Flamm & Susman, Ltd., Thomas R. Meites, Chicago, Ill., for plaintiffs.

Thomas H. Morsch, Sidley & Austin, Steven L. Bashwiner, Friedman & Koven, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs[1] brought this action on behalf of themselves and other similarly situated shareholders of Trans Union Corporation ("Trans Union") who held common stock between September 19, 1980, and February 10, 1981, when Trans Union merged with New T Company, a wholly-owned subsidiary of G. L. Corporation which, in turn, is owned and controlled by the Pritzker family of Chicago through a series of trusts held by the Canadian Imperial Bank of Commerce Trust Company (Bahamas), Limited, as trustee. In their amended complaint, plaintiffs assert various and sundry violations of federal and state law[2] arising out of the Trans Union-New T Company merger and they seek monetary and injunctive relief, including recission of the merger and the sale of one million newly-issued Trans Union shares to the Pritzker trusts just prior to the merger. Jurisdiction over the federal claims is asserted under section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and over the pendent state claims pursuant to well-settled principles of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

This matter is presently before the Court on plaintiff's motion for class certification pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Defendants oppose class certification on the grounds that the purported class representatives, Jeffries Eilert ("Eilert") and William E. Miller ("Miller"), are subject to unique defenses that are not typical of the class contrary to one of the prerequisites for class treatment set forth in Fed.R.Civ.P. 23(a)(3) and that they will not fairly and adequately protect the interests of the class as required by Fed.R.Civ.P. 23(a)(4). For the reasons set forth below, the Court finds defendants' objections to class certification to be without merit. Accordingly, the Court will conditionally certify a class of Trans Union shareholders as described in the amended complaint reserving the right to alter, amend or modify the class pursuant to Fed.R.Civ.P. 23(c).[3]

1. This lawsuit was originally filed by Dan F. Ridings in January, 1981, individually and on behalf of a class of persons similarly situated. In March, 1981, defendants moved to dismiss this action asserting, *inter alia*, that Ridings lacked standing. On June 5 and June 19, 1981, respectively, before any ruling on the motion to dismiss, Messrs. Jeffries Eilert and William E. Miller were added as individual plaintiffs in this case. On July 16, 1981, the Court permitted Eilert and Miller to be added as class representatives as well. On July 30, 1981, the Court permitted Ridings to withdraw as a plaintiff in this matter. In the opinion and order dated July 16, 1981, the Court stated that it would defer ruling on defendants' motion to dismiss or, alternatively, for summary judgment until after determination of the class certification question. *Peritz v. Liberty Loan Corporation*, 523 F.2d 349 (7th Cir. 1975).

2. The amended complaint asserts violations of sections 9, 10(b), 13(d), 14(a), and 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i, 78j(b), 78m(d), 78n(a), 78p(b), and certain rules promulgated thereunder as well as common law violations including breach of fiduciary duty, corporate waste and mismanagement, and negligent misrepresentation.

3. Defendants correctly point out that the class definition in the amended complaint is different than that set forth in plaintiffs' motion for class certification. The proposed class in the amended complaint is defined as:

[A]ll persons, other than defendants and those in concert with them, who were Trans

## Numerosity and Commonality

Defendants apparently concede by their failure to object to the proposed class on these grounds that the class is so numerous that joinder of all its members is impracticable within the meaning of Fed.R.Civ.P. 23(a)(1) and that there are questions of law or fact common to the class within the meaning of Fed.R.Civ.P. 23(a)(2). In the Court's view, the proposed class appears to satisfy both of these prerequisites.

 As of February 10, 1981, approximately 12,000,000 shares of Trans Union common stock were held by more than 12,-000 shareholders. *See* Exhibit D to Plaintiffs' Motion to Lift the Stay of Proceedings as to Their State Law Claims. This is obviously sufficient to satisfy the threshold requirement of numerosity. *See; e.g., Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (class of 40 would be sufficient though this case involved 151 shareholders); *Hochschuler v. G. D. Searle & Company,* 82 F.R.D. 339, 343 (N.D.Ill.1978) (class exceeding 1,000 obviously sufficient). Moreover, the questions of law or fact common to this proposed class include whether defendants knowingly or recklessly made material misstatements and omissions of fact in the September 22, 1980, press release, filings with the SEC, and two proxy statements issued in connection with the Trans Union-

New T Company merger and whether defendants conduct operated as a deceptive device, fraud, or fraud on the market and upon the plaintiff class. As this Court has stated previously, *see Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 400 (N.D.Ill. 1981), securities fraud cases are uniquely suited to class action treatment since the claims of individual investors are often too small to merit separate lawsuits. The class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing. *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 26 (7th Cir. 1975); *Kahan v. Rosensteil,* 424 F.2d 161 (3d Cir. 1970); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

## Typicality

The third requirement for class certification is that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed.R. Civ.P. 23(a)(3). In the instant case, defendants assert that Eilert, a professor of chemistry at Aurora College in Aurora, Illinois, and Miller, a vice-president in the Phoenix, Arizona, office of Lionel D. Edie and Company, an investment counseling firm, are subject to unique defenses that preclude their certification as class representatives.[4]

---

Union shareholders on September 19, 1980, the trading date immediately prior to Trans Union's announcement of the merger and stock purchase agreements, through and including February 10, 1981, when the merger of Trans Union into the New T Co. was effected.

Plaintiffs' motion for class certification describes the purported class as:

All persons other than the defendants and those in concert with them, who held common stock of Trans Union Corporation on or after the close of business on September 19, 1980.

Although for all practical purposes the classes proposed appear to be nearly identical, the Court will not view plaintiffs' motion for class certification as a *de facto* amendment of their pleadings as they suggest. Rather, we will certify the class as originally proposed. Plaintiffs may move to alter or amend the class

definition and their amended complaint if they so choose.

4. At the time of the merger, Miller owned 4,500 shares of Trans Union common stock and Eilert owned 60 shares of Trans Union common stock that he acquired in a spin-off from the stock of another company. As a threshold matter, defendants contend that neither Eilert nor Miller has standing to assert a fraud on the market claim because they did not purchase or sell Trans Union stock during the relevant period. It is well settled, however, that a minority shareholder forced to exchange his shares in a corporation pursuant to a merger is a "seller" within the meaning of the securities laws entitled to assert a cause of action for securities fraud. *Dudley v. Southeastern Factor & Finance Corp.,* 446 F.2d 303, 306–07 (5th Cir.), *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); *Dasho v. Susquehanna Corp.,* 380 F.2d 262, 266–67 (7th Cir.), *cert.*

Defendants contend that neither plaintiff relied upon the proxy materials alleged to contain material misstatements and omissions in connection with their decision to vote their shares in favor of the merger and that neither has been damaged by the merger since they both admit that the $55 price per share contemplated by the merger is "within the range of fairness." Defendants also maintain that because Miller is a sophisticated investor, he is incapable of representing less sophisticated members of the proposed class and that Miller's failure to opt out of the class action being prosecuted by other Trans Union shareholders in Delaware state court challenging the merger subjects him to a possibly unique res judicata defense in the instant action.

 The contention that Eilert is subject to a unique lack of reliance defense that bars his serving as class representative is untenable on the record before us. At his deposition taken on September 23, 1981, Eilert testified that he had read the Trans Union proxy statement and the supplement before voting his shares for the merger. *See* Eilert Dep. at 57–58, 115, 119. Eilert testified that although he did not read them in detail or study them, he read those portions of the documents that interested him. Under detailed questioning, Eilert was able to recall some of the specifics of the disclosures contained in the proxies and stated in general terms the nature of the alleged omissions and misrepresentations in those documents. *Id.* Far from being unique among Trans Union shareholders at the time of the merger, Eilert apparently is typical of the members of the class he seeks to represent, many of whom conceivably might have received and read the proxy statements, as Eilert testified he did, without being able to recall all the specifics of their reliance on those statements. Indeed, as this Court has stated on a previous occasion, "there is nothing 'unique' about a defense of lack of reliance. If it is an issue as defendants contend, it is one that applies to

each class member." *Issen v. GSC Enterprises, Inc.*, 522 F.Supp. 390, 403 (N.D.Ill. 1981), citing *Hurwitz v. R. B. Jones Corp.*, 76 F.R.D. 149, 158 (W.D.Mo.1977). *See also Hochschuler v. G. D. Searle & Company*, 82 F.R.D. 339, 345 (N.D.Ill.1978). Moreover, while affirmative proof of nonreliance is a good defense under the securities laws, *Panter v. Marshall Field & Company*, 646 F.2d 271, 284 (7th Cir. 1981), the existence of individual questions of reliance does not necessarily bar class certification on the common questions involved. If necessary, the Court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Defendants apparently concede that Miller read the Trans Union proxy statements, but they contend that he did not rely on those documents in deciding whether or not to vote for the merger. Instead, defendants contend that Miller voted in favor of the merger "solely because the merger represented an almost fifty percent premium above the prior market price for the Trans Union stock that Miller hoped to lock-in as a hedge against the possibility of higher offer" and as a result of conversations Miller had with his brother, John, who is also an investment counselor, and Roy Hermanson, an analyst with Lionel D. Edie & Company where Miller is also employed. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification at 7–8.

 The inferences defendants attempt to draw from Miller's deposition testimony with respect to his asserted nonreliance on the proxy statements, however, are not sufficiently compelling to render him an inadequate class representative on this ground. First, as we stated earlier with respect to Eilert, individual questions of reliance can be accommodated in the class context.

denied sub nom., *Bard v. Dasho*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); *Vine v. Beneficial Finance Company*, 374 F.2d 627 (2d

Cir. 1967); *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278, 1285–86 (N.D.Ill.1981).

Second, in the instant case, the available evidence does not indicate that Miller is atypical in that regard. Contrary to defendants' characterization of Miller's deposition testimony, he did not say that he voted in favor of the merger "solely" because the $55 price per share was almost fifty percent higher than the prior market price. He simply testified that he was aware of the price differential and was hopeful that a higher offer would be forthcoming. *See* Miller Deposition at 87. He did not imply that he did not rely on the proxy material at all in making his decision; rather, he testified that he read and relied on those documents. *Compare Panzirer v. Wolf*, [1979–80 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 97,251 and ¶ 97,363 (S.D.N.Y. 1980) (proposed class representative testified that she had not seen a copy of the company's annual report prior to her stock purchase). Furthermore, Miller testified that although he did discuss the Trans Union merger terms with his brother and Mr. Hermanson, he did not learn anything from them that he did not already know. Miller Deposition at 48. In any event, the fact that the class representative may have had discussions with a broker does not, by itself, render his claim or defenses atypical so as to preclude class certification. *Hochschuler v. G. D. Searle & Company*, 82 F.R.D. 339, 344 n.8 (N.D.Ill.1978); *Victorian Investors v. Responsive Environments Corporation*, 16 Fed.R.Serv.2d 1297, 1300, 56 F.R.D. 543, 546 (S.D.N.Y.1972).

■ Besides arguing that Miller's possible reliance upon the advice of others vitiates his class claims, defendants argue that Miller is too sophisticated an investor in his own right to lead a class of less sophisticated investors. Although it would seem that the class' interests would be better served if they were represented by someone with Miller's comparatively greater knowledge, defendants suggest that a so-called sophisticated investor may be subject to the unique defense that he is unjustified in relying upon any alleged misrepresentations or omissions in proxy material or press releases rendering his claim or defenses atypical. Although the United States Court of Appeals for the Seventh Circuit has indicated that it is unclear whether a sophisticated investor may be subject to a defense of unjustifiable reliance, that court has held that an open-end, diversified mutual fund is not a proper class representative for a class composed of less sophisticated investors. *J. H. Cohn & Company v. American Appraisal Associates, Inc.*, 628 F.2d 994, 998–99 (7th Cir. 1980). Even assuming that Miller is more sophisticated than the average investor, he is surely in a different position than a mutual fund for the purpose of serving as class representative.[5] While Miller was in charge of the four-man office of Lionel D. Edie & Company in Phoenix, he was in the same position as other members of the proposed class with respect to the alleged omissions in the material disseminated by Trans Union. Other courts have held that such a "sophisticated" investor is no less able to represent a shareholder class than the supposed uninformed "normal" investor. *Feder v. Harrington*, 52 F.R.D. 178, 183–84 (S.D.N.Y.1970); *Epstein v. Weiss*, 50 F.R.D. 387, 392–94 (E.D.La.1970) ("If the plaintiffs are correct in claiming that the defendants omitted to state material facts from the tender letter, the omitted information was no more available to brokers and large investment institutions than it was to the small investor.")[6]

---

**5.** The Court notes further that *J. H. Cohn & Company v. American Appraisal Associates, Inc.*, came before the court of appeals in the context of a mandamus action in which the plaintiff sought review of the district judge's denial of a motion for class certification. The Seventh Circuit has held repeatedly that a district court has broad discretion in determining the matter of class certification and that such discretion should be respected absent a showing of clear abuse. *In re General Motors Corp.*

*Engine Interchange Litigation*, 594 F.2d 1106, 1129 n.38 (7th Cir. 1979), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1980); *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25 (7th Cir. 1975).

**6.** Defendants' citation to *Garonzik v. Shearson Hayden Stone, Inc.*, 574 F.2d 1220 (5th Cir. 1978), in this context is inapposite. In that case, the court of appeals affirmed the district court's denial of class certification on the ground that the proposed class representative

■ Miller's failure to properly opt out of the class of Trans Union shareholders certified in *Smith v. Pritzker*, Civil Action No. 6342 (New Castle County Chancery Court), a class action challenging the Trans Union merger under Delaware law, also does not make him an atypical class representative by virtue of his being susceptible to a possible res judicata defense.[7] Miller is certainly not unique in this regard since the class already certified in *Smith* is substantially identical to the proposed class in the case at bar. Thus, it is likely that a significant portion of the class in this case may also be subject to the same defenses as would be raised against Miller. In any event, to the extent that Miller may not be typical of those Trans Union shareholders who chose to opt out of the Delaware class action, since Eilert apparently did opt out of the Delaware class, that problem may be handled through sub-classing should that become necessary.

■ Defendants' additional contention that neither Eilert nor Miller suffered any damage as a result of the merger and, thus, that neither may properly represent a class claiming it was injured by the assertedly inadequate price paid for its shares need not detain us long.[8] While both Eilert and Miller conceded during their depositions that the $55 price paid for their share was within the range of fairness, they also contended that they were entitled to more than that amount absent defendants' alleged fraud. Indeed, rather than conceding away

their damage claims, plaintiffs merely responded to questioning by defense counsel in a candid and forthright manner. They apparently could not honestly say that $55 was on its face grossly unfair or inadequate. Yet they contend that in the context of defendants' alleged fraud that the price was unfair and inadequate in that they should have received more for their shares.

Finally, defendants maintain that any harm that might have been caused by the initial proxy material was cured by the supplemental proxy statement which both Eilert and Miller admit receiving and reading before the shareholders' meeting. This argument appears to go to the merits of plaintiffs' claims rather than to the class certification question. In the same vein is defendants' argument with respect to the class claims regarding the Schedule 13D filing. As this Court stated in a previous opinion in this case, consideration of the merits would be improper prior to the determination of the class certification question. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975); *Ridings v. Canadian Imperial Bank of Commerce Trust Company (Bahamas), Limited,* No. 81 C 0486 (N.D.Ill., July 16, 1981). Furthermore, any problems that might arise in the future in this regard might be adequately handled through sub-classing.

was an attorney representing himself whose admitted sophistication rendered his claim atypical of the class. The court of appeals held that while this fact "might not have prevented class certification if the district judge was so inclined ... it presents a sufficient question of typicality to protect the district court's decision from reversal on appeal under the abuse of discretion standard of review." 574 F.2d at 1221. The recent case of *Lewis v. Johnson*, 92 F.R.D. 758 (E.D.N.Y.1981), cited in defendants' supplemental brief is also inapposite. That case did not involve the sophisticated investor problem but rather the named plaintiff's lack of reliance on documents containing the alleged omissions and his pursuit of an independent investment strategy unconnected to defendants' alleged nondisclosures.

7. Miller apparently desired to opt out of the Delaware proceeding, but he failed to do so by the May 15, 1981, deadline. Miller Dep. at 62–68. As a collateral issue, plaintiffs contend that the class notice in the Delaware case was constitutionally defective because it failed to notify potential class members of the pendency of this class action in the Northern District of Illinois. Cf. *Simer v. Rios*, 661 F.2d 655, 664 (7th Cir. 1981) (failure to notify potential class members of settlement may violate fundamental principles of due process).

8. Both Eilert and Miller, individually and on behalf of the class, also seek rescission of the merger and the sale of shares to the Pritzker trusts in addition to damages. *See* Amended Complaint at ¶¶ 25–26, 62–63; Eilert Deposition at 139; Miller Deposition at 128.

In sum, defendants have not shown that either Eilert or Miller is subject to such unique defenses as to render either plaintiff unfit to represent the class proposed herein.

### Adequacy of Representation

In order to satisfy the requirements of Fed.R.Civ.P. 23(a)(4) that the representative parties fairly and adequately protect the interests of the class, the interests of the class representative must coincide with those of the rest of the class and the class representative and his attorney must be prepared to prosecute the action vigorously, tenaciously and with adequate financial commitment. *Issen v. GSC Enterprises, Inc., supra,* 522 F.Supp. at 464; *Hochschuler v. G. D. Searle & Company, supra,* 82 F.R.D. at 348. To the extent that the inquiry under the typicality requirement of Rule 23(a)(3) tends to overlap the first prong of the inquiry under Rule 23(a)(4) with respect to the congruence of the interests of the class and class representative, we need not repeat our prior discussion in this part of our opinion. Defendants contend, however, that in addition to the unique defenses supposedly applicable to Eilert and Miller which were discussed and rejected earlier, neither of the proposed class representatives has exhibited the degree of knowledge or commitment to this case that is required of a proper class representative.

At the outset, we are mindful of Judge Wood's admonition in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir. 1981), that although the burden of establishing the class requirements rests on the plaintiff,

> it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the Court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house.

In determining whether the named parties will fairly and adequately protect the interests of the class, the Court must be cognizant that the role of the class representative is limited, though important. As long as the Court is "assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest," and that they are represented by competent and experienced counsel, Rule 23(a)(4) will generally not present an obstacle to class certification. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, supra,* 657 F.2d at 896. In one case, *Surowitz v. Hilton Hotel Corporation,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), the plaintiff, a Polish immigrant, was held to be an adequate class representative even though she did not understand her complaint at all, could not explain statements in it, had little knowledge of what the lawsuit was about, did not know defendants by name or the nature of defendants' alleged misconduct, and had relied entirely on her son-in-law. Although *Surowitz* is admittedly an extreme case, it does illustrate the flexibility inherent in the trial court's determination of the adequacy of representation provided by the class representative.

Defendants contend that Eilert's participation in this case to date evidences "an uninterrupted pattern of delay and indecision" and that he lacks an understanding of the substance of this case in order to adequately prosecute it on behalf of the class. The record before the Court, however, does not support defendants' contentions. Eilert decided to become a class plaintiff in late Spring, 1981, Eilert Deposition at 22, 146, and filed his motion to join Ridings as a plaintiff on June 4, 1981. That motion was allowed on June 5, 1981. Subsequently, on June 22, 1981, Eilert moved to be designated as a class representative. That motion was allowed by the Court on July 16, 1981, in the course of its memorandum opinion concerning defendants' motion to stay issued that date. Such minimal delay in joining this action, if it can be so

characterized, does not indicate a complete disregard for the interests of the class or cast doubt on Eilert's capacity to serve as class representative. The facts of the instant case are strikingly different from those in the only case relied on by defendants, *In re LTV Securities Litigation*, 88 F.R.D. 134, 151 (N.D.Tex.1980), in which the plaintiff filed suit more than a year after the discovery of defendants' alleged fraud, did not move for class certification until more than a year after that, and sought certification of a class that was substantially similar to a class that other plaintiffs sought to represent in a class motion filed three weeks prior to the time that plaintiff filed her complaint.

The record also does not reflect that Eilert has such a total lack of understanding or knowledge of this case or the obligations of a class representative so as to disqualify him from serving as class representative. Although Eilert honestly and candidly admitted that he does not know the full responsibilities of being a class action plaintiff, few persons other than attorneys involved in class litigation could accurately articulate the full extent of the fiduciary responsibilities and other efforts required of a class plaintiff. Eilert, who is a professor of chemistry at Aurora College, is not a sophisticated investor, but his deposition testimony reveals that he is aware of the substance of his complaint in sufficient particularity to enable him to make an intelligent contribution to the prosecution of this case; that he is aware of the financial commitment involved in prosecuting a case such as this; that he knows who his coplaintiff is, though they apparently have not met; and that he is aware of and desires the relief sought by the amended complaint. Eilert has made arrangements with his counsel to be kept apprised of the progress of this litigation by periodic personal meetings and telephone calls. The Court must conclude that Eilert is perfectly able to fairly and adequately protect the interests of the class within the meaning of Rule 23(a)(4).

Miller's deposition testimony reveals that he also is sufficiently well informed about this case to be a responsible class representative. Indeed, defendants had argued earlier that Miller is too sophisticated an investor to represent less-informed members of the plaintiff class. During his deposition, Miller indicated that he is aware of the nature of the class claims and the relief sought, the general parameters of defendants' alleged wrongdoing and the range of fair value of the Trans Union stock. Although understandably neither Miller nor Eilert is as well versed in the intricacies of this case as are counsel for either side, it is clear that they are sufficiently well informed as to satisfy the threshold requirements of Rule 23(a)(4).

The only remaining objection to Miller's bid to be named class representative is the asserted conflict of interest arising from his position as an investment advisor for certain discretionary and supervisory accounts in the Phoenix office of Lionel D. Edie & Company which accounts held Trans Union shares. Defendants apparently contend that a conflict exists between Miller's advocacy of the class' position to the effect that the merger price was unfair and Miller's admitted fiduciary obligation to his clients, a breach of which might subject him to suit by his clients and inhibit his ability to adequately represent the class in this case. Contrary to defendants' assertions, however, Miller's position is that he was deceived as were his investment clients by defendants' misstatements and omissions. Rather than being in conflict, Miller contends that he and his clients share a common interest in prosecuting this case to a successful conclusion. Although defendants received the Court's permission to submit written interrogatories to Miller's clients with regard to the class certification issue, they apparently were unable to turn up any conflict between Miller and his clients. On the evidence before the Court at the present time, we conclude that Miller does not suffer from a conflict of interest by reason of his position as an investment advisor that would preclude his appointment as class representative.

*Predominance and Superiority*

 Defendants do not dispute that, assuming the four prerequisites of Rule 23(a) are satisfied, this case meets the additional requirements of Rule 23(b)(3) that common questions of law or fact predominate over individual questions and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. As the Court noted earlier in this opinion, securities fraud cases are uniquely suited to class treatment and there is a policy in favor of class certification in such cases. *King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 26 (7th Cir. 1975). Accordingly, we find that, in addition to satisfying the four prerequisites in Rule 23(a), the class proposed in the instant case meets the requirements for certification under Rule 23(b)(3).

*Conclusion*

Accordingly, the Court will certify a class, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, composed of:

> all persons other than the defendants and those in concert with them who held Trans Union common stock on September 19, 1980, through and including February 10, 1981, when the merger of Trans Union and New T Company was effected.

It is so ordered.[9]

---

**9.** As this Court noted earlier, note 3 *supra,* the class definition proposed in plaintiffs' motion for class certification differs from that set forth in plaintiffs' amended complaint. Rather than view plaintiffs' motion for class certification as a *de facto* motion to amend the complaint, without defendants' having had an opportunity to respond in that regard, the Court will certify a class as originally proposed. Plaintiffs may file an appropriate motion to amend the class definition in the amended complaint as well as to alter the class definition set forth herein, if they so desire, on or before April 23, 1982.