WINTER, Circuit Judge:
For herself and a class that she represented, Polly Ann Barber sued Kimbrell’s, Inc. (Kimbrell’s), which operates a furniture store in Charlotte, North Carolina, and Furniture Distributors, Inc., Kimbrell’s corporate parent, alleging that both defendants were liable for statutory damages under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., for violations of certain disclosure requirements set forth in the Federal Reserve Board’s Truth in Lending Regulations (Regulation Z), 12 C.F.R. Part 226. The district court certified a class consisting of plaintiff and persons who, between July 16,1973 and May 3, 1974, entered into add-on credit transactions at Kimbrell’s downtown Charlotte furniture store. It ruled that Kimb-rell’s and its corporate parent were liable under the Act to plaintiff and the members of the class and, proceeding non-jury, it assessed statutory damages in the amount of $100,000 plus costs and attorneys’ fees. Barber v. Kimbrell’s, Inc., 424 F.Supp. 42 (W.D.N.C.1976).
We affirm the district court’s determination of liability against both defendants but reverse and remand for a redetermination of damages. We conclude that the district court improperly computed the maximum class recovery allowable by statute and erred in not submitting the damages question to a jury. Moreover, we conclude that the district court should have made findings to support its award of attorneys’ fees. We therefore vacate the judgment as to the penalty and attorneys’ fees and remand the case for further proceedings.
I. Facts
On July 16, 1973, plaintiff entered into a retail installment contract with Kimbrell’s, Inc. for the purchase of various items of household furniture totalling $592.70. Because she already owed Kimbrell’s $65.00 from a previous credit purchase, the July 16th agreement consolidated both the old and new balance and required repayment of the combined debt in twelve equal monthly installments. The written contract reflecting this agreement purported to disclose credit information as to both the new and combined transactions.[1]
On May 3,1974, plaintiff filed this action, alleging that Kimbrell’s, Inc. had violated § 121 of the Truth in Lending Act, 15 U.S.C. § 1631,[2] and praying statutory dam *219 ages as provided for in § 130(a) of the Act, 15 U.S.C. § 1640(a).[3] On October 29, 1974, Barber amended her complaint so as to maintain the suit as a class action pursuant to F.R.Civ.P. 23(b)(3).[4] Five months later, after substantial discovery had been conducted, plaintiff, with leave of court, amended her complaint a second time to add Kimbrell’s parent, Furniture Distributors, Inc., as a party defendant.[5] On June 11, 1975, the court certified a plaintiff class consisting of those persons who entered into add-on credit transactions[6] at Kimbrell’s downtown Charlotte store between July 16, 1973 and May 3, 1974. At the time of judgment, this class numbered approximately 740 members.[7]
The case was heard on June 7, 1976, on cross-motions for summary judgment. Concluding that the defendants, as a matter of law, had violated certain of the disclosure requirements set forth in Regulation Z, 424 F.Supp. at 47-50, the district court granted plaintiff’s motion for summary *220 judgment as to defendants’ liability. After carefully canvassing the factors specified by Congress as relevant to the determination of statutory damages in the class-action context, 424 F.Supp. at 51-2, the district court awarded the class $100,000, the maximum award then allowable under § 1640(a)(2)(B).[8] Although plaintiffs’ counsel sought combined attorneys’ fees of $19,-955, the district court, pursuant to § 1640(a)(3), awarded them $25,000 as “a reasonable sum under the circumstances.” 424 F.Supp. at 52.
II. Liability
Kimbrell’s concedes liability as to one violation of Regulation Z. It admits that the use of the term “Total Time Balance” in its disclosure document[9] rather than the term “Total of Payments,” as required by § 226.8(b)(3) of Regulation Z,[10] constitutes a technical violation of the Act sufficient to subject it to civil liability under § 1640. Furniture Distributors, Inc. contends, however, that the district court erred in holding it jointly liable with Kimbrell’s for this or any other violation of the Act on the ground that it is not a statutory creditor within the meaning of 15 U.S.C. § 1602(f). Further, both defendants argue that the district court erred in granting summary judgment as to their liability for any of the other disclosure violations alleged by plaintiff.
A.
Section 1640 imposes civil liability on any “creditor” who fails to comply with the disclosure provisions of the Act. Section 1602(f) defines a creditor as one “who regularly extend[s] or arrange[s] for the extension of credit . . . .” There is no doubt that Kimbrell’s, the corporate entity with which plaintiff dealt, is a creditor within the meaning of § 1602(f). Furniture Distributors contends, however, that it neither extends nor arranges for the extension of credit on a regular basis and that, therefore, it cannot be held to be a statutory creditor. The district court rejected this argument, 424 F.Supp. at 46, and we agree.
Section 226.2(h)(2), Regulation Z, provides that a person is an “arranger of credit” if he “fh]as knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit . . . .” The district court found that the “officers and directors of . Furniture Distributors, Inc. participated in the development and preparation of the standard contract form . . . and distributed the form for use in Kimbrell’s, Inc. and each of the other forty-seven retail stores in the Kimbrell’s chain.” Further, the district court found that “Furniture Distributors, Inc. has knowledge of the credit terms for all the consumer credit sales by its subsidiaries in that each consummated contract is sent to [Furniture Distributors] for review.” 424 F.Supp. at 46. From our review of the record, we cannot say that these two findings are clearly erroneous, F.R.Civ.P. 52(a), and they place Furniture Distributors squarely within the definition of “arranger,” 12 C.F.R. § 226.2(h)(2), and, hence, within the statutory definition of creditor, 15 U.S.C. § 1602(f). See Zale Corp. and Corrigan-Republic, Inc. *221 v. Federal Trade Commission, 473 F.2d 1317, 1320-22 (5 Cir. 1973).
B.
In addition to finding defendants in violation of § 226.8(b)(3), Regulation Z, as both now concede, the district court found multiple and substantial violations of § 226.6(a) (disclosures not made in meaningful sequence) and § 226.6(c) (misleading or incorrect additional information). 424 F.Supp. at 48-50.[11] Defendants contend that the district court erred in finding these violations as a matter of law and urge that we remand this portion of the case for further proceedings on the merits.[12] We are of the opinion that the district court acted properly in disposing of the question of defendants’ liability by way of summary judgment.
Of course, F.R.Civ.P. 56(c) provides that summary judgment is appropriate only where there is “no genuine issue as to any material fact . . . .” The questions of whether additional information is presented in a misleading or confusing manner, § 226.6(c), and whether the sequence of disclosed information is meaningful, § 226.-6(a), are not usually susceptible to summary judgment, because the adequacy or inadequacy of defendants’ disclosure under these provisions, depending as it does on the perceptions of a “reasonable” consumer, presents a factual issue about which there is ofttimes a dispute. The questions are similar to that of materiality in federal securities litigation, the resolution of which depends upon the perceptions of a “reasonable” investor, where summary judgment is normally inappropriate. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).
Nonetheless, even as to a question of • materiality in federal securities litigation, summary judgment will lie in an appropriate case. Quoting from an earlier decision in this circuit, Mr. Justice Marshall, speaking for the Court in TSC Industries, wrote: “Only if the established omissions are ‘so obviously important to an investor, that reasonable minds cannot differ on the question of materiality’ is the ultimate issue of materiality appropriately resolved ‘as a matter of law’ by summary judgment. Johns Hopkins University v. Hutton, 422 F.2d 1124, 1129 (CA 4 1970).” 426 U.S. at 450, 96 S.Ct. at 2133. In Johns Hopkins, we held that, under the facts of that case, reasonable minds would not differ as to the materiality of the facts misrepresented and withheld and that the disposition of the case by way of summary judgment was therefore appropriate. 422 F.2d at 1129. Likewise, in the instant case, we conclude that reasonable minds would be in agreement that defendants’ disclosure statement was confusing and misleading in the respects documented in the district court opinion. We, therefore, agree with the district court that defendants violated the dis *222 closure requirements of Regulation Z, §§ 226.6(a) and (c).[13]
III. Damages
We consider next the appropriate damages to be awarded plaintiff class. Section 1640(a), which creates a private right of action against any creditor who fails to disclose the information required by the Act or Regulation Z, authorizes both actual and statutory damages.[14] The district court, in the instant case, found no actual damages sustained by plaintiff class. But, exercising the discretion authorized by § 1640(a)(2)(B), the district court awarded statutory damages of $100,000, the maximum amount then allowable under the statute.[15] The district court concluded that the maximum award was appropriate after carefully canvassing the five factors specified by Congress as relevant to the determination of statutory damages in class actions. 424 F.Supp. at 51-52.[16] While we do not question the correctness of the district court’s factual findings in this regard, we nonetheless conclude that it erred both in fixing the maximum recovery at $100,000 and in not submitting the damages issue to a jury as demanded by defendants.
A.
In determining the maximum recovery in a class action under the Act, we look to the purposes of the Act and the history of its various enforcement provisions. These, we think, provide the answer to the issue we must decide.
The Truth in Lending Act was en-. acted by Congress to serve two purposes: (1) to promote the full disclosure of credit terms in consumer credit transactions, and (2) to prescribe a uniform method for stating these terms better to enable the consumer to compare “the various credit terms available to him and avoid the uninformed use of credit.” 15 U.S.C. § 1601. As enacted in 1968, the Act provided for both administrative enforcement, 15 U.S.C. § 1607, and enforcement by private litigation, 15 U.S.C. § 1640. As an incentive to private enforcement, the Act allowed a successful plaintiff to recover statutory damages of twice the amount of the finance charge imposed in the transaction (but not less than $100 nor more than $1,000), plus reasonable attorneys’ fees and court costs. Pub.L. No. 90-321, Title I, § 130(a), 82 Stat. 157 (1968).
While the private enforcement scheme envisioned by the original Act worked well enough in individual suits, it soon became evident that the scheme was not equally well-suited to class actions. Since a class recovery consisted of simply an aggregation of individual statutory damages, with each class member being entitled to a minimum recovery of $100, courts soon recognized that a recovery of statutory damages by a large plaintiff class had the potential of visiting financial disaster upon a defendant creditor.[17] As a consequence, courts be *223 came increasingly reluctant to certify class actions under § 1640.[18]
To strike an appropriate balance between the advantages of the class action as a vehicle of private enforcement and the need of creditors to avoid financial ruin, Congress in 1974 amended § 1640 as it related to class recoveries of statutory damages. S.Rep. No. 278, 93rd Cong., 1st Sess., 14-15; Note, Class Actions Under the Truth in Lending Act, 83 Yale L.J. 1410, 1428-32 (1974). The amendment (1) eliminated any minimum recovery requirement as to individual class members, (2) placed a ceiling on the total class recovery so that a creditor’s total liability for statutory damages would be no more than “the lesser of $100,000 or 1 per centum of the net worth of the creditor,” and (3) made the award of statutory damages in the class context discretionary rather than a matter of right as it had been before the amendment and as it continued to be with regard to individual actions. Pub.L. No. 93-495, § 408(a), 88 Stat. 1518 (1974).
We think that the district court upset the balance struck by Congress in the 1974 amendment when it fixed the maximum recovery allowable under § 1640(a)(2)(B) at $100,000. The class certified by the district court consisted of all persons purchasing furniture from Kimbrell’s downtown Charlotte store under an add-on credit arrangement. Yet, in determining the maximum liability of defendants under § 1640(a)(2)(B), the district court looked not just to the assets allocable to this one store, but to the total net worth of defendant Furniture Distributors, which included the combined assets of all of its subsidiaries as well as assets it held independently of these subsidiaries. Finding 1% of this total net worth to be well in excess of $100,000, the district court concluded that § 1640(a)(2)(B) limited defendants’ liability to $100,000. We are of the opinion that, given the perimeter of the class certified, the district court erred in looking beyond those assets of defendants properly allocable to the store at which plaintiff dealt.[19] Accordingly, we remand for a redetermination of the appropriate statutory ceiling.[20]
Our conclusion is reinforced by this additional consideration. Under established class-action doctrine, a judgment rendered in favor of a Rule 23(b)(3) class binds all class members receiving notice and not requesting exclusion. F.R.Civ.P. 23(c)(3). In the instant case, once summary judgment establishing defendants’ liability under the Act was entered, all members of plaintiff class were thereafter barred from securing *224 individual judgments against defendants; but actions by persons who had dealt with other stores in Furniture Distributors’ chain were not foreclosed. Conceivably, class suits could have been brought against Furniture Distributors as to each of its forty-eight stores. If, in each of these suits, each court granting judgment had looked to Furniture Distributors’ total net worth in determining the maximum recovery under § 1640(a)(2)(B), Furniture Distributors and its subsidiaries could have been liable for as much as $1.5 million, a figure far in excess of the maximum recovery contemplated by the statute.[21] Such total recovery against a single creditor would transgress the congressional intent to limit such creditor’s financial responsibility. We therefore conclude that, with respect to class actions, the intent of Congress was to place an absolute limit of 1% of net worth on the total recovery potentially realizable against a single creditor for a particular violation or set of violations without regard to the number of class actions into which the litigation against the creditor might be fragmented.[22]
B.
Included in Kimbrell’s answer to Barber’s complaint was a demand that the claims asserted against it be tried by a jury. This demand was twice renewed — once when Kimbrell’s filed its answer to Barber’s amended complaint seeking class certification and again when Furniture Distributors filed its answer. The record does not disclose that defendants’ demands were later retracted nor their right to a jury trial waived.
Finding the demand both timely made and still pendent, we conclude that on remand the damage award under § 1640(a)(2)(B) must be determined by a jury. We think that Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), requires this result.[23]
Curtis arose in a context not unlike the one before us here. Plaintiff had filed a private enforcement action under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., alleging racial discrimination in housing, for which she prayed both compensatory and punitive damages as authorized by 42 U.S.C. § 3612. Defendant made a timely demand for a jury trial which was denied by the district court. After a trial on the merits, at which the court found that defendant had engaged in unlawful racial discrimination in housing, plaintiff was awarded $250 in punitive damages, there being no actual damages proved. The Seventh Circuit reversed the district court on the jury trial issue and the Supreme Court affirmed in a unanimous decision.
Finding the “legislative history on the jury trial question . . . sparse, and . . . ambiguous, “415 U.S. at 191, 94 S.Ct. at 1007, the Court nevertheless held that there was a constitutional right to a *225 jury trial in Title VIII cases.[24] In reaching this holding, the Court first laid to rest any doubt about the applicability of the Seventh Amendment to statutorily-created claims. “The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.” Id. at 194, 94 S.Ct. at 1008. This statement suggests two tests which should be utilized in determining whether an action based on federal statute entails a constitutional right to a jury trial. First, are the rights and duties created by the statute analogous to rights and duties historically comprehended by the common law? Second, are the remedies sought legal rather than equitable in nature? See also Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); Pons v. Lorillard, 549 F.2d 950 (4 Cir. 1977), aff’d on non-constitutional grounds, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).[25]
Applying these two tests, the Court in Curtis concluded that a jury trial, if demanded, was constitutionally required in Title VIII cases.
We think it is clear that a damages action under [Title VIII] is an action to enforce ‘legal rights’ . . . . A damages action under the statute sounds basically in tort — the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant’s wrongful breach. . . . [T]his cause of action is analogous to a number of tort actions recognized at common law. More important, the relief sought here — actual and punitive damages — is the traditional form of relief offered in the courts of law. 415 U.S. at 195-96, 94 S.Ct. at 1009 (footnotes and citations omitted, emphasis added).
Curtis thus requires a holding that private civil actions brought to redress violations of the disclosure provisions of the Truth in Lending Act likewise entail a constitutional right to a jury trial upon demand. Accord Mosley v. National Finance Co., 440 F.Supp. 621 (M.D.N.C.1977).
First, we conclude that “a damages action under the statute sounds basically in tort . . ..” Curtis v. Loether, supra, 415 U.S. at 195, 94 S.Ct. at 1009. A duty to disclose is closely akin to the traditional tort duty not to misrepresent or deceive. Under traditional tort principles, a creditor has the affirmative duty not to engage in fraud by intentionally disclosing false information for the purpose of misleading the person seeking credit. The statutory duty to disclose, imposed by 15 U.S.C. § 1631, merely enlarges the creditor’s duty beyond that imposed by common law. Now he has the affirmative duty not only to be accurate in what he does disclose but also to make a full disclosure of information deemed relevant and material by the Federal Reserve Board. To use the Court’s language in Curtis, the Truth in Lending Act “merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant’s wrongful breach.” 415 U.S. at 195, 94 S.Ct. at 1009.
Second, the relief sought by plaintiff in the instant action, statutory damages under § 1640(a)(2)(B), is nothing more than a prayer for statutorily-authorized punitive damages. As the Court pointed out in Curtis, punitive damages are within the “traditional form of relief offered in the courts of law.” 415 U.S. at 196, 94 S.Ct. at 1009.[26]
*226 On remand, therefore, the district court must impanel a jury for the purpose of determining the amount of statutory damages due the plaintiff class.[27]
IV. Attorneys’ Fees
Section 1640(a)(3) permits a successful plaintiff to recover, in addition to damages, “the costs of the action, together with a reasonable attorney’s fee as determined by the court.” In the instant case, the district court awarded plaintiff $25,000 in attorneys’ fees “which [sum] the court [found] to be . reasonable . . . under the circumstances,” notwithstanding that the sum was greater than that requested. 424 F.Supp. at 52. While at this juncture we do not question the appropriateness of this award, we must nonetheless reverse and remand for detailed findings in support of this award.
It is well established that the allowance of attorneys’ fees “ ‘is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered. And an appellate court is not warranted in overturning the trial court’s judgment unless under all of the facts and circumstances it is clearly wrong.’ ” Lea v. Cone Mills Corp., 467 F.2d 277, 279 (4 Cir. 1972), quoting United States v. Anglin & Stevenson, 145 F.2d 622, 630 (10 Cir. 1944), cert. denied, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405. Yet, as this statement clearly implies, appellate review, while necessarily limited in scope, is nonetheless available to insure that the trial court’s discretion has not been abused. We cannot afford effective appellate review unless we have before us the district court’s reasons for finding a particular award appropriate.
A number of circuits, following the lead of the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974), have announced that their district courts are to consider and make detailed findings with regard to twelve factors relevant to the determination of reasonable attorneys’ fees.[28] We agree that these factors must be considered by district courts in this circuit in arriving at a determination of reasonable attorneys’ fees in any case where such determination is necessary; and in order to make review by us effective, we hold that any award must be accompanied by detailed findings of fact with regard to the factors considered.[29]
Because such findings were not made by the district court in the instant case, we vacate the award of attorneys’ fees and remand the issue for a new award with finding to support the amount awarded. In making a new award, the district court *227 should compensate counsel for their services in this appeal and for further proceedings in the district court.

AFFIRMED IN PART; REVERSED IN PART.

. This document is reproduced in 424 F.Supp. at 45.

. In pertinent part, 15 U.S.C. § 1631 provides that a “creditor shall disclose clearly and conspicuously, in accordance with the regulations *219 of the [Federal Reserve] Board, to each person to whom consumer credit is extended, the information required under this part D of this subchapter.” The Board’s regulations detailing disclosure requirements imposed upon creditors in consumer credit transactions are set forth in Regulation Z, 12 C.F.R. §§ 226.6-226.8.

. Section 1640(a), since amended, read as follows at the time the decision below was rendered:
Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part of part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person as a result of the failure;
(2) (A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or
(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney’s fee as determined by the court.
In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor’s failure of compliance was intentional.

. In pertinent part, Rule 23(b) provides that: An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(D . ■ ■
(2) . . .
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Generally, a class-action suit for money damages is maintained, if at all, under subdivision (b)(3) of Rule 23.

. Furniture Distributors, Inc., a holding company, owns forty-eight furniture stores in North Carolina, South Carolina and Georgia. These are operated through thirty subsidiary corporations, each wholly-owned by the parent, Furniture Distributors. The officers and directors of Furniture Distributors and all of its subsidiaries are substantially the same. Kimbrell’s, Inc., the original defendant in this suit, is one of Furniture Distributors’ wholly-owned subsidiaries operating five retail furniture stores, including the one in downtown Charlotte, North Carolina, where plaintiff made her purchases.

. The term “add-on credit transaction” will be used throughout this opinion to denote a transaction in which a new credit balance is consolidated with an existing balance, resulting in a repayment schedule applicable to the combined debt.

. At the time of certification, the class was stipulated as including 854 members. Following notice and the exercise of exclusion rights under subdivision (c)(2) of Rule 23, the class was reduced to 740. The judgment entered by the district court provides that at the time of distribution, the membership is to be further reduced to exclude “those members whose contracts with Kimbrell’s were executed more than one year before the commencement of the class action on October 29, 1974.” 424 F.Supp. at 52. See 15 U.S.C. § 1640(e), which imposes a one-year limitations period for private actions enforcing the Act’s disclosure provisions.

. See Footnote 3, supra. In concluding that $100,000 was less than 1% of defendants’ net worth, the court looked to the combined assets of Furniture Distributors, Inc., and all its subsidiaries. These combined assets were valued at $15.4 million in 1973, $17.2 million in 1974, and $18.6 million in 1975. 424 F.Supp. at 51. Under present § 1640(a)(2)(B), the maximum award in a class action is the lesser of $500,-000, or 1 per centum of the net worth of the creditor.

. Reproduced in 424 F.Supp. at 45. See item 8 in the right-hand column.

. 12 C.F.R. § 226.8(b) reads in pertinent part: In any transaction subject to this section, the following items, as applicable, shall be disclosed:
(D • • •
(2) . . .
(3) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness and, . . . the sum of such payments using the term, “total of payments.” .

. The district court also found a violation of § 226.8(c)(8)(i) (non-disclosure of finance charge components). Since the court’s decision was rendered, the Federal Reserve Board has issued a clarifying amendment requiring disclosure of finance charge components only “where the total [finance] charge consists of two or more types of charges . . . Defendants contend that, because the credit transactions conducted by them involve only single-component finance charges, no disclosure of components is required in light of the Board’s subsequent clarification. We agree with defendants’ contention in this regard, and direct that this alleged violation be disregarded in any future proceedings.

. The determination of the appropriateness of summary judgment in establishing defendants’ liability is particularly important in view of our conclusion that the Seventh Amendment mandates a right to a jury trial upon demand in civil actions under the Truth in Lending Act. See Part IIIB of this opinion, infra. If the issue of liability were inappropriately disposed of on a Rule 56 motion, then defendants would have a right on remand to have plaintiffs allegations concerning defendants’ violations of the Act’s disclosure requirements submitted to a jury. Of course, where summary judgment is properly granted, no Seventh Amendment issue arises. Fidelity & Deposit Co. v. United States, 187 U.S. 315, 320, 23 S.Ct. 120, 47 L.Ed. 194 (1902).

. Other courts of appeals have affirmed grants of summary judgment as to violations of § 226.6(a) [meaningful sequence], Allen v. Beneficial Finance Co., 531 F.2d 797 (7 Cir.), cert. denied, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976), and § 226.6(c) [additional information], Weaver v. General Finance Corp., 528 F.2d 589 (5 Cir. 1976).

. Recognizing that it is difficult for a consumer to prove actual monetary damages arising out of a disclosure violation, Congress imposed a civil penalty (“statutory damages”) for noncompliance, awardable to the successful plaintiff. As originally enacted, § 1640 provided for only statutory damages. Pub.L. No. 90-321, § 130(a), 82 Stat. 157 (1968). Since amended by Pub.L. No. 93-495, § 408(a), 88 Stat. 1518 (1974), the Act now authorizes both actual damages (§ 1640(a)(1)) and statutory damages (§ 1640(a)(2)).

. Effective March 23, 1977, the maximum class recovery allowable under § 1640(a)(2)(B) was raised from $100,000 to $500,000. Pub.L. No. 94-240, § 4(3), 90 Stat. 260 (1976).

. These are: (1) the amount of actual damages sustained by the class, (2) the frequency and persistence of non-compliance, (3) defendant’s resources, (4) the number of persons adversely affected by non-compliance, and (5) the extent to which non-compliance was intentional.

. See, e. g., Gerlach v. Allstate Insurance Co,, 338 F.Supp. 642, 646 (S.D.Fla.1972), where the court noted a potential class recovery of a billion dollars.

. See, generally, as to the problem of class actions under § 1640 before 1974, S.Rep. No. 278, 93rd Cong., 1st Sess., 14-16 (1973); Note, Class Actions Under the Truth in Lending Act, 83 Yale L.J. 1410 (1974). The most frequently cited case denying class certification on account of the magnitude of the likely class recovery is Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972), in which Judge Frankel expressed what was to become the prevailing view: “[T]he proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damages to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act.” Id. at 416. “[T]he allowance of thousands of minimum recoveries like plaintiffs would carry to an absurd and stultifying extreme the remedy Congress prescribed as the means of private enforcement.” Id. at 414.

. We recognize that in Clausen v. Beneficial Finance Co., 423 F.Supp. 985 (N.D.Cal.1976), appeal pending (9 Cir.), the district court likewise looked to the parent company’s net worth in determining the maximum recovery allowable under § 1640(a)(2)(B) to a limited class. We respectfully disagree with that result.

. We are cognizant of the fact that our holding here will substantially reduce the recovery of each individual class member. We note, however, that individual recoveries in class suits under the Act since the 1974 amendments have tended to be quite small. See Eovaldi v. First Nat. Bank of Chicago, 71 F.R.D. 334 (N.D.Ill.1976) (95,000 members sharing in statutory damages of $100,000); Haynes v. Logan Furniture Mart, Inc., Civil No. 70-C-1827 (N.D.Ill. 1975) (2,500 members sharing in statutory damages of $10,000). Nonetheless, we think that congruity between the class certified and the asset-base utilized in determining maximum statutory damages allowable under § 1640(a)(2)(B) is required.

. Given the existence of a one-year limitations period, 15 U.S.C. § 1640(e), and the fact that to date no other suits have been filed against defendants with regard to the violations charged in this action, it is unlikely that the potential for multiple recoveries will be realized in this case. But it is the potential overall recovery which concerns us, not the likelihood that it will be realized.

. This interpretation is consistent with the generally expressed disapproval of multiple or duplicative recoveries in private enforcement actions under the Truth in Lending Act. See 15 U.S.C. § 1640(g) (enacted 1974, Pub.L. No. 93-945, § 407, 88 Stat. 1518). See also Powers v. Sims and Levin, 542 F.2d 1216, 1219-20 (4 Cir. 1976); Turner v. Firestone Tire & Rubber Co., 537 F.2d 1296, 1298-99 (5 Cir. 1976); Mirabal v. General Motors Acceptance Corp., 537 F.2d 871, 880-81 (7 Cir. 1976).

. As will appear from the text, infra, Curtis was decided on constitutional grounds. The recent decision in Lorillard v. Pons, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), holds that a question of the right to a jury trial of a statutorily-created right should be decided as a matter of statutory construction, rather than of constitutional right, wherever possible. See also Curtis, 415 U.S. at 192 n. 6, 94 S.Ct. 1005. But in the instant case, we think that the Act and its legislative history are inconclusive with regard to the right to jury trial issue, and therefore we proceed to consideration of the constitutional basis of the claim. Curtis, 415 U.S. at 192, 94 S.Ct. 1005.

. The Seventh Amendment to the United States Constitution provides that “[i]n Suits at common law, where the value in controversy shall exceed twenty dollars the right of trial by jury shall be preserved.”

. In Ross v. Bernhard, the Supreme Court also suggested a third test: whether the issues concerning which the jury demand was made are within the “practical abilities and limitations of juries.” 396 U.S. at 538 n. 10, 90 S.Ct. at 738. This third test, however, was not reiterated by the Court in Curtis, raising doubts as to its continued vitality. At any rate, neither the issues involved in Curtis nor those in the instant case are so complex that they could not effectively and efficiently be decided by a jury.

. It is true that the language of § 1640(a)(2)(B) authorizing statutory damages in “such amount as the court may allow . . . ” (emphasis added), can be read, as defendants contend, to mean that Congress envisioned no jury trial right on the damages question. But in Curtis v. Loether, supra, the statutory language likewise implied that the award of damages be made by the court rather than by a jury, 42 U.S.C. § 3612 (“[t]he court . . may *226 award to the plaintiff actual damages and not more than $1,000 punitive damages . . .”).

. In'instructing the jury on the issue of damages, the district court should inform the jury as to the maximum recovery allowable under law, see Part IIIA of this opinion, and as to those factors set forth in § 1640(a) which Congress has determined should be considered in making an award of damages under § 1640(a)(2)(B), see footnote 16, supra.

. See King v. Greenblatt, 560 F.2d 1024 (1 Cir. 1977), petition for cert. filed (November 14, 1977); Finney v. Hutto, 548 F.2d 740 (8 Cir. 1977), aff'd - U.S. -, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); Kerr v. Screen Extras Guild, 526 F.2d 67 (9 Cir. 1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); Evans v. Sheraton Park Hotel, 164 U.S.App.D.C. 86, 503 F.2d 177 (1974).
These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney’s opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney’s expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys’ fees awards in similar cases.

. A number of reported district court decisions from this circuit have already utilized the Johnson guidelines in making an attorneys’ fee award. See, e. g., Sherill v. J. P. Stevens, 441 F.Supp. 846 (W.D.N.C.1977); Phillips v. Moore, 441 F.Supp. 833 (W.D.N.C.1977); Younger v. Glamorgan Pipe and Foundry Co., 418 F.Supp. 743 (W.D.Va.1976), vacated on other grounds, 561 F.2d 563 (4 Cir. 1977).